**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROGER HEARE, SR. | : | |
| Plaintiff | : | |
| v | : | Civil Action No. PJM-08-2231 |
| WARDEN, et al. | : | |
| Defendants | : | |

o0o

<u>**MEMORANDUM**</u>

Pending is Defendants' Motion for Summary Judgment.  Papers No. 6 and 7.[1]

Plaintiff opposes the motions.  Paper 10.  Upon review of the papers filed, the court finds

a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2008).

<u>Plaintiff's Allegations</u>

Plaintiff claims that while he was incarcerated prison officials were trying to kill

him.  Paper No. 1.  He states the food was so bad it "almost kills you." *Id*. at p. 2. He

states he is a sixty-six- year-old man who can see through the things prison officials are

doing, unlike the younger inmates who are drug addicts. *Id*.  He claims they were

draining his private bank accounts and placed him in a MRSA[2] cell for the months of

April and May of 2008.  He states "the governor's letter got me out through Health

Department." *Id*.  Plaintiff claims "these people will do anything for money" and states

he wants them arrested. *Id*. at p. 3.

---

[1]  Defendants filed Responses to the Court's Order to Show Cause which were construed as Motions for Summary Judgment.  Paper No. 8.  In the same Order, Plaintiff's request for injunctive relief was denied as moot as he has been released from prison.

[2] Methicillin-Resistant Staphylococcus Aureus (MRSA).

Plaintiff also claims while assigned to a work-release job he fell, breaking his right hip, ankle and wrist.  He alleges he was not provided with any medical care for his injuries.  He states he has at least 55 medical problems which are bad, chronic and severe. Among the problems listed Plaintiff states he has a deep cough in his chest that is MRSA or pneumonia and that he has a fractured hip, wrist and ankle for which he received no medical help at all.[3]

In his amended complaint Plaintiff claims he was working at Burger King and his eye was burnt with 8000-degree grease that popped out into his eye.  Paper No. 4 at p. 5. . He claims on April 15, 2008, again while at work a "black man spilled ice all over my cooking station" and he fell on solid concrete, breaking his hip, wrist and ankle.  He states his case manager told him he was being killed because he faked slipping on the ice, and he claims he was then put into a MRSA cell in an effort to kill him.

<u>Standard of Review</u>

A motion for summary judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute

---

[3]  The complaint is a rambling diatribe raising unsubstantiated conspiracy claims including allegations Plaintiff is the  target of a murder plot and he suffers from innumerable serious medical conditions including prostate cancer and lung cancer.

will defeat the motion:

> By its very terms, this standard provides that the mere
> existence of *some* alleged factual dispute between the parties
> will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no
> *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of  its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those

punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition.  *Farmer*, 511 U.S. at 839– 40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844.   If the requisite subjective

4

knowledge is established, an official may avoid liability  "if [he] responded reasonably to

the risk, even if the harm was not ultimately averted. *Farmer*, 511 U.S. at 844.

Reasonableness of the actions taken must be judged in light of the risk the defendant

actually knew at the time.  *Brown v. Harris*,  240 F. 3d 383, 390 (4th Cir. 2000); *citing*

*Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually

taken in light of suicide risk, not those that could have been taken).

Defendants Dr. Ava Joubert and Dr.Colin Ottey ("medical defendants") provide

medical records establishing that Plaintiff received care for his medical complaints and

that the claims he raised regarding other medical problems were investigated.  Paper No.

7.  Plaintiff was transferred from the Reception Center (MRDCC) to Maryland

Correctional Training Center (MCTC) on October 25, 2007.  He was seen by medical

staff on April 9, 2008 after being treated in the Emergency Department of the Washington

County Hospital for a burn to his eye which he claimed occurred on his work release job.

Paper No. 7 at Ex. A.  He was examined by a nurse, and at the time did not voice any

complaints about his hip, ankle or wrist.  *Id*.  No further treatment was required for

Plaintiff's eye at the time and it was noted that he did not appear to be in any distress.  *Id*.

On April 18, 2008, Plaintiff filed a sick call request form stating his perceived

need to go to the Emergency Department because he only had 5% vision in his right eye.

He also claimed that two days after he burned his eye, he slipped and fell on ice at his

work release job, twisting his left ankle and injuring his right wrist and his back.  The day

after Plaintiff submitted the request, he was seen in Nurse Treatment where no injury to

his eye, hip, ankle, or wrist was noted.  He was, however, scheduled to see an optometrist on April 25, 2008.  *Id*.

On May 9, 2008, Plaintiff was examined by an optometrist who noted that he needed glasses to correct his vision but did not note any burn to his eyes.  On June 3, 2008, Plaintiff received a new pair of glasses.  On June 6, 2008, Plaintiff was transferred to Correctional Mental Health Center in Jessup (CMHCJ) for a psychiatric evaluation and treatment.  He returned to MCTC on June 21, 2008.  Plaintiff did not complain about his hip, ankle or wrist while confined at CMHCJ, but upon his return to MCTC he filed sick call request forms claiming he had not received treatment for an eye burn, a fractured hip, a fractured wrist, and that he had MRSA.  Plaintiff requested to be sent to the hospital for treatment and claimed he was coughing up blood.  On July 13, 2008, Plaintiff was seen in response to the request forms submitted on July 4, 7, and 10, 2008.  Upon examination it was noted that Plaintiff's wrist was not swollen but his ankle was swollen.  He was referred to the doctor for further evaluation.  *Id*.

On July 14, 2008, Dr. Joubert examined Plaintiff and noted that while he claimed to be coughing for two to three months, he did not cough once during the examination.  She also noted that Plaintiff had no respiratory problems or open wounds that would have exposed him to a MRSA infection.  A chest x-ray was ordered as well as a tuberculosis test.  The x-ray was taken on July 18, 2008, and showed no active disease, including pneumonia.  Because no active disease was detected, Plaintiff was not prescribed antibiotics.

6

On July 30, 2008, Plaintiff was examined by Nurse Rounds for a list of 22 complaints, including MRSA, pneumonia, burn to his eye, fractured wrist, hip and ankle. Paper No. 7, Ex. B at pp. 18 – 32.; pp. 38 – 46.  Upon examination Plaintiff's chest was clear but he was scheduled to see a Physician's Assistant for further evaluation.  *Id*.  On August 7, 2008, Plaintiff was seen by P.A. Swecker after Plaintiff filed another request form regarding the same complaints.  Swecker ordered x-rays of Plaintiff's right hip, left ankle and right wrist.  On August 11, 2009, Plaintiff complained of a deep cough, claimed he was coughing up blood, and demanded to be sent to the hospital.  When he was called to the medical unit for evaluation, however, Plaintiff left the clinic and refused to be treated.  On August 14, 2008, Plaintiff's x-rays were taken and revealed no fractures or dislocations of his hip, wrist or ankle.  The x-ray did show degenerative joint disease in Plaintiff's wrist.

On September 10, 2008, Plaintiff again filed request forms regarding complaints of a deep cough, coughing up blood and MRSA pneumonia.  He also requested a single cell, claiming he was too sick to tolerate a cell buddy.  Although a lower bunk was recommended for Plaintiff, it was noted that there was no medical necessity for a single cell assignment.  On September 26, 2008, Plaintiff was evaluated for coughing and bloody sputum.  Another x-ray was ordered and Plaintiff was prescribed Cipro for ten days as a precaution for respiratory tract infection.  The x-ray, taken on October 1, 2008, showed no active disease, and was unchanged from the x-ray taken on July 18, 2008.

Medical Defendants explain that there are specific cells in Housing Unit 6 at

MCTC used for patients with active MRSA, in addition to the isolation cells in the infirmary used for inmates with any type of communicable disease. The cells are cleaned thoroughly between uses. Plaintiff was never assigned to Housing Unit 6 and was never placed on a MRSA protocol during his incarceration.

Defendant Warden Horning states that Plaintiff's allegations are the product of a delusional mind and are simply untrue. Paper No. 6 at Ex. A. Psychiatric evaluations of Plaintiff indicate that he suffers from delusional and paranoid thinking including many delusions involving conspiracies to cause him harm. *Id.* Plaintiff's Response in Opposition to the Motions for Summary Judgment consists of 65 pages of documents, some handwritten by Plaintiff and some xerox copies of hospital discharge instructions and certified mail receipts for items mailed to the Governor of Maryland and other agencies. Paper No. 10. The content is rambling, vague, and accusatory. In light of the evidence produced by Defendants, it is clear to the court that Plaintiff received adequate medical care during his incarceration and that Defendants are entitled to summary judgment in their favor.

A separate Order follows.

                                             /s/
                                    PETER J. MESSITTE
July 14, 2009                       UNITED STATES DISTRICT JUDGE